1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                   AT SEATTLE

8  ALEKSANDRA S. VELICHKO            )
                                     )
9           Plaintiff,               )        CASE NO. C05-0740-RSL
                                     )
10          v.                       )        REPORT AND
                                     )        RECOMMENDATION
11 JO ANNE B. BARNHART,              )
   Commissioner of Social Security,  )
12                                   )
            Defendant.               )
13 _____ )

14          Plaintiff Aleksandra S. Velichko appeals to the District Court from a final decision of the

15 Commissioner of the Social Security Administration (the "Commissioner") denying her

16 application for Supplemental Security Income disability benefits under Title XVI of the Social

17 Security Act.  For the reasons set forth below, it is recommended that the Commissioner's

18 decision be AFFIRMED.

19                              I.  PROCEDURAL HISTORY

20          Plaintiff applied for Supplemental Security Income ("SSI") on August 20, 2001, with a

21 protective filing date of August 6, 2001.  In her application, she claimed that she had been

22 disabled since January 1952 (Tr. 98) with heart problems and pain in her lower back and both

23 legs.  She also claimed that she had been unable to work since 1954 or 1955.  (*Id.*)  The Social

24 Security Administration denied Plaintiff's application initially (Tr. 57–58) and upon

25

26 REPORT AND RECOMMENDATION
   PAGE - 1

1  reconsideration. (Tr. 59.)  A hearing was held before Administrative Law Judge ("ALJ") Edward

2  P. Nichols, on October 30, 2003.  Plaintiff, who was represented by counsel, and her niece, Galina

3  Bozhko, testified at the hearing.  (Tr. 29–56.)  A Ukrainian/English interpreter provided

4  assistance during the hearing.  (Tr. 29.)  The ALJ issued an unfavorable decision on February 13,

5  2004, finding that Plaintiff did not have "pain [or] other functional limitations so severe as to

6  preclude even sedentary, unskilled work activity" (Tr. 27) and that because she could perform

7  such work, she was not under a disability "at any time through the date of the decision."  (Tr. 28.)

8  On February 18, 2005, the Appeals Council denied Plaintiff's request for review, making the

9  ALJ's decision the final decision of the Commissioner.  (Tr. (6–8).)  Plaintiff timely filed her

10  appeal with this Court on April 19, 2005.

11                                II.  THE PARTIES' POSITIONS

12         Plaintiff requests that the Court reverse the Commissioner's decision and remand for

13  payment of benefits.  Plaintiff argues that the ALJ erred in: (1) finding that Plaintiff's employment

14  when she was still in the Ukraine was full-time work and therefore constituted "past relevant

15  work"; (2) otherwise misstating the factual evidence; (3) improperly assessing Plaintiff's

16  credibility; (4) improperly rejecting Ms. Bozhko's testimony; and (5) improperly rejecting the

17  evidence supplied by Plaintiff's treating physicians.

18         Defendant responds that the Commissioner's decision should be affirmed because it is

19  supported by substantial evidence and is free of legal error.

20                                III.  STANDARD OF REVIEW

21         This Court may set aside the Commissioner's denial of social security disability benefits

22  when the ALJ's findings are based on legal error or are not supported by substantial evidence.

23  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Substantial evidence means more than a

24  scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might

25

26  REPORT AND RECOMMENDATION
    PAGE - 2

1  accept as adequate to support a conclusion.  *Id.*  To determine whether substantial evidence

2  supports the ALJ's decision, we must consider the evidence as a whole, weighing both evidence

3  that supports, and evidence that detracts from the ALJ's conclusion.  *Id.*  The ALJ is responsible

4  for determining credibility, resolving conflicts in the testimony, and resolving ambiguities.  *Id.*

5  Where evidence is susceptible of more than one rational interpretation, it is the ALJ's decision

6  that must be upheld).  *Id.*

7  IV.  EVALUATING DISABILITY

8  The claimant bears the burden of proving that she is disabled.  *Meanel v. Apfel*, 172 F.3d

9  1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial

10  gainful activity by reason of any medically determinable physical or mental impairment which can

11  be expected to result in death or which has lasted, or can be expected to last, for a continuous

12  period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

13  The Social Security regulations set forth a five-step sequential evaluation process for

14  determining whether a claimant is disabled under the Social Security Act.  *Bowen v. Yuckert*, 482

15  U.S. 137, 140 (1987); 20 C.F.R § 416.920.  At step one, the claimant must establish that he is not

16  engaging in any substantial gainful activity.  *Id.* At step two, the claimant must demonstrate that

17  he has one or more severe impairments.  *Id.*  At step three, the Commissioner will determine

18  whether the claimant's impairment meets or equals any of the listed impairments described in the

19  regulations. *Id.*  At step four, if the claimant's impairment(s) neither meets nor equals one of the

20  listed impairments, the Commissioner will then evaluate the claimant's residual functional capacity

21  and past relevant work.  If claimant is not able to perform his past relevant work, the burden shifts

22  to the Commissioner at step five to identify jobs existing in significant numbers in the national

23  economy that the claimant can perform given her residual functional capacity, age, education, and

24  work experience.  *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  If a claimant is

25

26  REPORT AND RECOMMENDATION
PAGE - 3

1  determined to be disabled at any stage of the process, there is no need to consider subsequent

2  steps. *Id*. at 1099.

3          V.  SUMMARY OF THE RECORD EVIDENCE AND OF THE ALJ'S FINDINGS

4          Plaintiff, who was born on or about August 19, 1949 (Tr. 21), was 52 years old when she

5  applied for benefits in August 2001 and was 54 years old at the time the ALJ issued the decision.

6  She received the Ukrainian equivalent of a GED in 1966. (Tr. 104.)  She emigrated to the United

7  States as a refugee in February 2001.  (Tr. 21.)  Although she has never worked since arriving in

8  the United States, she worked as a clerk for 25 years.  This employment ceased in 1992, for

9  reasons not clear from the record.[1]

10         A.      *Plaintiff's application and testimony*

11         In her application, Plaintiff indicated that her heart problems and the pain in her legs and

12 back render her unable to "move or do any kind of action without feeling pain." (Tr. 98.)  While

13 she has had physical problems since she was a child (Tr. 105 (stating that she started having

14 palpitations as a child)), now she is unable to walk or sit for a long time and even sleeping causes

15 her pain (*id*.).  She also feels pain in her stomach and "under [her] chest". (*Id*.)  "My left leg is

16 shorter than right leg.  There is greater load work action on my right leg.  In 2000 I lost

17 consci[ousness] for 1.5 hour [sic]." (*Id*.)

18         At the hearing, Plaintiff was hard-pressed to speak in an audible voice because she was

19 feeling chest pain and weakness.  (Tr. 34.)  She testified that she frequently felt pain at a level that

20 made it difficult for her to speak out and for which she rested on the couch.  (*Id*.)

21

---

22         [1]In her SSI application, Plaintiff stated that "I was discharged because of my health

23 condition." (Tr. 98.)  However, Dr. Marty Hoiness, M.D., who performed a consultative
   psychiatric evaluation of Plaintiff on November 10, 2001, recorded in his notes that Plaintiff told

24 him that she had "quit working in 1992 because the organization she worked for shut down." (Tr.
   167.)

25

26 REPORT AND RECOMMENDATION
   PAGE - 4

1    With respect to her employment in the Ukraine, Plaintiff stated that she was "frequently

2 picked up by the emergency medical team" (Tr. 35) and that she "had times where [she] only

3 worked for 35 days out of the year and the rest of it was hospitalized." (Tr. 36.)  She also stated,

4 however, that "when I was working I was working about six hours.  Sometimes it would last

5 longer, maybe seven, but that was rare," and that during these periods of time when she worked

6 relatively full days, she worked five days a week.  (Tr. 36.)  She testified that her biggest

7 problems were heart and psychological ("memory loss, could not relax, agitated") problems.  (Tr.

8 38.)  In response to her attorney's questioning, Plaintiff said that she had sometimes missed work

9 because of the psychological problems.

10    To give the ALJ a better sense of how much Plaintiff worked, her attorney elicited

11 testimony about her ability to earn a livelihood.  Plaintiff testified that her job, which paid her 75

12 rubles, had been her sole means of support but that her brothers had also helped her by giving her

13 food and money.  (Tr. 37.)

14    Regarding her current state, Plaintiff testified that she never goes shopping by herself,

15 does not drive or take the bus, and is somewhat isolated from people other than family members.

16 However, with respect to family members, she testified that she received visits from a 71-year-old

17 brother almost every day (Tr. 43), and from Galina Bozhko "[s]ometimes twice a week." (Tr. 44.)

18 She also receives visits from other nieces and nephews.  She also stated that without help from

19 her family members, she would be unable to prepare food or do household chores like laundry.

20 (Tr. 44.)

21    Finally, regarding her current inability to work, Plaintiff testified that if she were in the

22 Ukraine now, she would not be working because she is of retirement age.  She also explained that

23 even if retirement was not a possibility, she could not now perform her past job because she is

24 forgetful and unable to speak ("I forget — when I'm wanting to say something, I immediately

25

26 REPORT AND RECOMMENDATION
PAGE - 5

1  forget what it is I need to say.") (Tr. 45.)

2        B.    Testimony of Galina Bozhko

3        Galina Bozhko's mother and Plaintiff are cousins.  (Tr. 46.)  Ms. Bozhko testified that she

4  calls Plaintiff every day and that she tries to visit every other day and sometimes every day or even

5  more "because it depends on how she's feeling."  (Tr. 47.)  However, when asked why Plaintiff

6  would have said that she only sees Ms. Bozhko twice a week, Ms. Bozhko confirmed that

7  Plaintiff could have trouble remembering her visits because of her general forgetfulness.  She

8  noted that Plaintiff forgets simple things like meals and medicines.  (Tr. 47.)

9        Ms. Bozhko testified that on different kinds of occasions when she would try to engage

10  her aunt (i.e., asking her why she hadn't yet gotten out of bed, or inviting her to walk to the

11  school to pick up Ms. Bozhko's son), Plaintiff would complain of being tired and feeling "heart

12  stops."  (Tr. 48.)

13        In these and other points, Ms. Bozhko's testimony largely corresponded to and confirmed

14  Plaintiff's testimony.

15        C.    Medical sources[2]

16              1.    Dr. Denis Short

17        Plaintiff began to see Dr. Short for psychiatric treatment in April 2002.  The record

18  contains treatment notes from Dr. Short from April 2002 through October 2004, as well as DSHS

19  evaluation forms.  She was assessed with major depression, a generalized anxiety disorder, and

20  possible somatization disorder.  (Tr. 23.)  After receiving treatment and therapy from April 2002

21  through July 9, 2002, she received medication renewals and evaluations every three months.  (Id.)

22  As the ALJ correctly noted, "[d]uring these evaluations, the claimant reported minimal

23

24        [2]The Court discusses only those medical sources whose treatment by ALJ Nichols is
25  challenged by Plaintiff.

REPORT AND RECOMMENDATION
26  PAGE - 6

1  improvement." (*Id.*)

2      On a treatment note dated October 14, 2003, Dr. Short wrote something that looks like

3  "Write this summary for her Legal assistant in obtaining SSI." (Tr. 389.)  Due to the natural

4  imperfections inherent in handwriting, the word represented above as "assistant" could also have

5  read "assistanc".

6      In the DSHS evaluation forms, completed on March 9, 2004 (Tr. 393–96), and May 3,

7  2004 (Tr. 402–07), Dr. Short assessed Plaintiff's cognitive abilities as markedly or severely

8  impaired, and her social abilities as ranging from reflecting no impairment to being severely

9  impaired.  More specifically, Plaintiff's "[a]bility to relate appropriately to co-workers and

10  supervisors" was assessed as markedly impaired (Tr. 395), and her "[a]bility to respond

11  appropriately to and tolerate the pressure and expectations of a normal work setting" was

12  severely impaired (*id.*).  However, Plaintiff's "[a]bility to control physical or motor movements

13  and maintain appropriate behavior" was unimpaired (*id.*), her "[a]bility to interact appropriately in

14  public contacts" was mildly impaired (*id.*), and her "[a]bility to care for self, including personal

15  hygiene and appearance" was mildly impaired (*id.*).  In the May evaluation, this last was judged to

16  be moderately impaired, a step up from "mild" impairment (*id.* at 404).  Overall, Dr. Short

17  estimated that Plaintiff could suffer from this level of impairment for the rest of her life.  (Tr. 396,

18  405.)

19          2.    *Dr. Richard Washburn*

20      The record contains a DSHS evaluation form completed by Dr. Richard Washburn and

21  dated January 2002.  (Tr. 171–75.)  In this form, Dr. Washburn noted that Plaintiff had "poor

22  delayed memory, poor auditory and visual concentration, poor abstract reasoning, and poor

23  practical judgment." (Tr. 173.)  In explaining that "mental health intervention [would not be]

24  likely to restore or substantially improve [Plaintiff's] ability to work for pay in a regular and

25

26  REPORT AND RECOMMENDATION
    PAGE - 7

1   predictable manner," Dr. Washburn wrote that "client has limited work [history], no English,

2   chronic depression, many complaints of poor health, needs SSI." (Tr. 174.) He recommended

3   medication and a counselor "able to speak her language" and wrote "Refer for SSI." (*Id.*)

4        D.      *The ALJ's findings*

5        At step one, ALJ Nichols found that Plaintiff had not engaged in substantial gainful

6   activity since August 6, 2001. (Tr. 27.) At step two, he found that Plaintiff had been diagnosed

7   with depression and a somatization disorder and that the combination of these impairments was

8   severe. (*Id.*) At step three, he found that her impairments did not meet or medically equal the

9   requirements of any listed impairments. (*Id.*)

10       At step four, after considering and discounting some of the evidence, most notably some

11  of Plaintiff's testimony, Ms. Bozhko's testimony, and data from Drs. Short and Washburn, ALJ

12  Nichols found that Plaintiff had the residual functional capacity to perform the exertional and

13  nonexertional requirements of at least sedentary unskilled work activity, including her past

14  relevant work. In making this finding, ALJ Nichols determined that "even when giving the benefit

15  of the doubt to the claimant and crediting some of her physical complaints, the evidence supports

16  a finding that the claimant should be able to perform the physical requirements of at least

17  sedentary work activity." (Tr. 26.) The evidence cited by the ALJ supporting this finding

18  included: (1) Dr. Biermann's assessment that Plaintiff would be able to perform sedentary work,

19  but also noting that bursitis in her right hip affected her ability to ambulate and to sit for long

20  periods of time (Tr. 345); and (2) Dr. Hoiness's assessment that she would be able to perform

21  simple and repetitive tasks, but not manage funds or interact with people (Tr. 343). The ALJ

22  acknowledged that Plaintiff had been diagnosed with a depressive disorder, but noted that this

23  disorder "imposes nonexertional limitations on her residual functional capacity." (Tr. 26.)

24       Having found that Plaintiff possessed residual functional capacity to perform unskilled

25

26  REPORT AND RECOMMENDATION
    PAGE - 8

1 sedentary work, the ALJ went on to find that Plaintiff's past work as a clerk in the Ukraine

2 constituted past relevant work, noting that Plaintiff had testified that her work activity had been

3 enough to support her financially and that Plaintiff had reported having worked full time.  (Tr.

4 27.)

5       Because ALJ Nichols found that Plaintiff had sufficient residual functional capacity to

6 perform her past relevant work, characterized as unskilled sedentary or less than sedentary work

7 (Tr. 26), the ALJ's analysis ended at step four.

8 VI.  ANALYSIS

9       This analysis will first review ALJ Nichols's rejection or discounting of certain evidence

10 for legal error, then proceed to determine whether his findings were supported by substantial

11 evidence.

12       *A.    Physicians' opinions*

13       Plaintiff argues that the ALJ erred by mischaracterizing and disregarding the medical data

14 and assessments provided by Drs. Short and Washburn.  Dr. Short was Plaintiff's treating

15 psychiatrist.  Dr. Washburn performed a DSHS evaluation.

16       *1.    Dr. Short*

17       The Commissioner must provide "clear and convincing reasons" for rejecting the

18 uncontradicted opinion of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

19 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1999)).  The opinion of an examining

20 doctor, even if contradicted by another doctor, can only be rejected for specific and

21 legitimate reasons that are supported by substantial evidence in the record.  *Lester*, 81 F.3d at

22 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

23       An ALJ is responsible for assessing the credibility of and resolving ambiguities and

24 conflicts in the medical evidence.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

25

26

1  "The ALJ need not accept an opinion of a physician – even a treating physician – if it is

2  conclusionary and brief and is unsupported by clinical findings." *Id.* (citing *Magallanes*, 881

3  F.2d at 751). "Where medical reports are inconclusive, questions of credibility and resolution of

4  conflicts in the testimony are functions solely of the Secretary." *Magallanes*, 881 F.2d at 751.

5      In the present case, Dr. Short's records are riddled with inconsistencies and minor errors

6  that complicate the analysis. First, Dr. Short's records contain many misspellings or illegibly-

7  written words that require a reader to guess at the correct word. One such critical word played a

8  role in leading ALJ Nichols to conclude that Dr. Short's records had been biased in favor of

9  helping Plaintiff obtain SSI aid.

10     However, even if ALJ Nichols erred in his reading of this particular word, he also noted

11  that Plaintiff had reported to Dr. Biermann that her psychiatric treatment was going well and Dr.

12  Biermann herself had observed that Plaintiff's depression was stable. (Tr. 302.) More

13  importantly, Dr. Short's own records contain no clinical findings tending to support Plaintiff's

14  complaints of physical pain. Indeed, Dr. Short's treatment notes and evaluations both note that

15  Plaintiff has had a lifetime of being treated as an invalid (Tr. 388, 395, 396), has "ingrained

16  expectations that she will continued [*sic*] to be cared for" (Tr. 395), and "has lifetime of living

17  [illegible] learned helplessness. She has no special incentive to change this pattern of existence."

18  (Tr. 404.)

19     Given these comments in Dr. Short's own notes supporting ALJ Nichols's observation

20  that Plaintiff is not highly motivated to work, ALJ Nichols's decision to discount Dr. Short's

21  ultimate conclusions regarding Plaintiff's ability (or lack thereof) to work with other people is

22  supported by specific and legitimate reasons that are themselves supported by substantial evidence

23  in the record. In addition, the presence of such notes and observations is in stark contrast to the

24  absence of clinical findings supporting Dr. Short's conclusion that Plaintiff was possibly precluded

25

26  REPORT AND RECOMMENDATION
    PAGE - 10

1   from ever returning to work.  Accordingly, I conclude that ALJ Nichols was not required to

2   accept Dr. Short's conclusionary opinions as they were unsupported by clinical findings.

3              2.   *Dr. Washburn*

4          Plaintiff argues that ALJ Nichols improperly disregarded Dr. Washburn's assessment.

5   However, it is uncontested that Dr. Washburn's assessment, written on a DSHS evaluation form,

6   and containing lengthy handwritten notes often exceeding the space allotted, was based neither on

7   mental status examinations nor on psychological testing.  It is also undisputed that Dr. Washburn

8   based his assessment on Plaintiff's subjective complaints.  Thus, because Dr. Washburn's opinion

9   was based only on Plaintiff's subjective complaints and was not supported by any clinical findings,

10  ALJ Nichols's rejection of the finding that Plaintiff was unable to work was proper.  *Matney*, 981

11  F.3d at 1019; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

12        B.   *Plaintiff's testimony*

13         Plaintiff argues that ALJ Nichols erred in dismissing the credibility of her testimony.

14         In assessing a claimant's subjective symptom testimony, an ALJ applies a two-step test.

15  First, the ALJ must determine whether the claimant has produced objective medical evidence of

16  an underlying impairment that could reasonably be expected to produce some degree of

17  symptom.  *Smolen v. Chater*, 80 F.3d 173, 1281 (9th Cir. 1996).  Second, if such evidence has

18  been produced, and if there is no "affirmative evidence" of malingering, an ALJ "may reject the

19  claimant's testimony regarding the severity of her symptoms only if [s]he makes specific

20  findings stating clear and convincing reasons for doing so."  *Id*. at 1284.

21         In the present case, ALJ Nichols accepted that Plaintiff suffers from depression and a

22  somatization disorder.  However, ALJ Nichols found that "the objective medical evidence does

23  not show any evidence of physical impairments that could be responsible for the claimant's alleged

24  pain complaints."  (Tr. 25.)  This was incorrect.  The correct inquiry is whether, once Plaintiff

25

26  REPORT AND RECOMMENDATION
    PAGE - 11

1 produced evidence of an underlying impairment, that impairment could reasonably be expected to

2 produce some degree of symptom.  Thus, the question is whether Plaintiff's depression and

3 somatization disorder (acknowledged by ALJ Nichols to exist) could produce some degree of the

4 pain complained of by Plaintiff.  ALJ Nichols answered this question in the affirmative himself,

5 stating that "I conclude that the claimant has been diagnosed with depression and a *somatization*

6 *disorder causing numerous physical complaints*."  (Tr. 25 (emphasis added).)  Accordingly, the

7 first prong of the *Smolen* test is satisfied.

8        The second prong of the *Smolen* test inquires whether there is affirmative evidence of

9 malingering.  In the present case, ALJ Nichols remarked that Plaintiff showed herself "less than

10 motivated to work, considering herself at age 54 to be of 'retirement age.'" (Tr. 26.)[3]  Although

11 Plaintiff argues that the ALJ's perception of her unwillingness to work is the product of imperfect

12 translation of her testimony, the ALJ's perception is supported by evidence in the record, most

13 notably Dr. Short's repeated observations that Plaintiff "has lifetime of living [illegible] learned

14 helplessness.  She has no special incentive to change this pattern of existence." (Tr. 404.)  Thus,

15 there appears to be affirmative evidence of malingering tending to discredit Plaintiff's subjective

16 pain testimony.

17        Even if there was no affirmative evidence of malingering, ALJ Nichols adequately

18 explained his reasons for refusing to fully credit Plaintiff's subjective pain testimony.  In cases

19 where there is no affirmative evidence of malingering, "[t]o find the claimant not credible the ALJ

20 must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty),

21 on conflicts between [her] testimony and [her] own conduct, or on internal contradictions in that

22 testimony."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The reasons

23 enumerated by the ALJ "must be sufficiently specific to allow a reviewing court to conclude the

24

25      [3]ALJ Nichols made a similar comment at Tr. 24.

26 REPORT AND RECOMMENDATION
PAGE - 12

1   [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit

2   [the] claimant's testimony." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ

3   may consider, for example: 1) ordinary techniques of credibility evaluations, such as the

4   claimant's reputation for lying and prior inconsistent statements concerning the symptoms; 2)

5   unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

6   of treatment; 3) the claimant's daily activities; and 4) medical evidence tending to discount the

7   severity of subjective claims. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

8          First, he noted that Plaintiff's testimony was inconsistent. (Tr. 24–25.) On the one hand,

9   Plaintiff represented that she had been disabled since childhood, yet had managed to hold down a

10  job in the Ukraine for many years. ALJ Nichols also noted that Plaintiff "has not been fully

11  compliant with treatment recommendations and on several occasions did not take her medications

12  as directed." (Tr. 25.) He also remarked that Plaintiff has only received treatment for her mental

13  impairments through medications. (*Id.*)

14         In light of the inconsistencies in her testimony and her relatively limited efforts to improve

15  her condition and seek thorough treatment, ALJ Nichols properly concluded on the basis of

16  adequately clear and convincing reasons that Plaintiff's allegations regarding the severity of her

17  impairments were not fully credible.[4]  *See Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d

18  1453, 1463–64 (9th Cir. 1995). Accordingly, I find that the ALJ did not err in finding Plaintiff's

19

20         [4]I note that although the foregoing reasons stated are sufficient to affirm ALJ Nichols's
    credibility determination, his finding that her reported activity levels contradict her allegations of

21  the severity of her symptoms improperly penalizes Plaintiff "for attempting to lead [a] normal
    li[fe] in the face of [her] limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). *See*

22  *also Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need
    not "vegetate in a dark room" in order to be deemed eligible for benefits). In particular, ALJ

23  Nichols cites "visiting with relatives" as one category of activity seeming to belie her allegations
    of impairment. While it is true that the record contains frequent mentions of Plaintiff's "visits"

24  with her family, these "visits" appear not to be mere social visits, but visits intended to help
    maintain and sustain Plaintiff.

25

    REPORT AND RECOMMENDATION

26  PAGE - 13

1   testimony not entirely credible.

2           C.      *Testimony of Ms. Bozhko*

3           An ALJ must consider a lay witness's observations of how the claimant's impairment

4   affects his or her ability to work.  20 C.F.R. § 404.1513(e)(2); *Smolen v. Chater*, 80 F.3d 1273,

5   1288 (9th Cir. 1996).  An ALJ may reject such testimony only if "reasons germane to each

6   witness" are given.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

7           In the present case, Plaintiff argues that ALJ Nichols improperly discounted or

8   disregarded Ms. Bozhko's testimony, which was similar to and bolstered Plaintiff's allegations of

9   disability.  Although Plaintiff characterizes the ALJ's treatment of Ms. Bozhko's testimony as a

10  rejection (Pl.'s Reply 5), ALJ Nichols's written decision does no such thing.  First, the decision

11  recognized that Ms. Bozhko checks in on Plaintiff almost every day to help Plaintiff remember to

12  pay her rent and take her medication.  (Tr. 24.)  Second, ALJ Nichols expressly noted that "I have

13  carefully considered the testimony of the claimant and her witness with respect to the claimant's

14  pain and functional limitations."  (Tr. 26.)  Having considered Plaintiff's and Ms. Bozhko's

15  testimony, ALJ Nichols concluded that Plaintiff does indeed suffer from mental impairments, but

16  that these impairments leave Plaintiff with the ability to perform the mental demands of unskilled

17  work.  This conclusion reflects the fact that much of Ms. Bozhko's testimony regarding Plaintiff's

18  difficulties closely paralleled Plaintiff's complaints to her treating and examining physicians, who

19  then took these factors into consideration when forming their opinions.  ALJ Nichols's

20  consideration of the medical opinions (incorporating and accounting for the factual

21  representations of Plaintiff's day-to-day functioning) led him to conclude that Plaintiff was still

22  able, despite her "depressive disorder that imposes nonexertional limitations on her residual

23  functional capacity," to perform unskilled work.  Accordingly, I conclude that ALJ Nichols's

24  evaluation of Ms. Bozhko's testimony was proper.

25

26  REPORT AND RECOMMENDATION
    PAGE - 14

1     C.    *The ALJ's findings*

2          1.    *Past relevant work*

3     Plaintiff argues that the ALJ erred in finding that Plaintiff's work as a "clerk assistant" in

4     the Ukraine constituted "past relevant work."   In particular, Plaintiff challenges the ALJ's finding

5     that Plaintiff performed this job on a full-time basis, or, in the alternative, that the work otherwise

6     qualified as substantial gainful activity.

7     ALJ Nichols's conclusion that Plaintiff's past work as a clerk assistant in the Ukraine

8     needs only to be supported by substantial evidence — that is, more than a scintilla but less than a

9     preponderance.   *Magallanes v. Bowen*, 881 F.2d at 750.   Here, Plaintiff herself supplied

10    information supporting the conclusion that she performed this work on a full-time basis.   Plaintiff

11    testified that "when I was working I was working about six hours.   Sometimes it would last

12    longer, maybe seven, but that was rare," and that during these periods of time when she worked

13    relatively full days, she worked five days a week.   (Tr. 36.)   Although Plaintiff also stated that

14    there were periods when she only worked 35 hours in a year, the context of this statement

15    strongly suggests that the 35-hour years were the exception rather than the rule.   In addition to

16    this hearing testimony, Plaintiff represented in her application for benefits that she had worked 8

17    hours a day, 5 days a week from 1986 to 1992.   These statements are sufficient to constitute

18    "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

19    *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   Accordingly, I find that ALJ Nichols's finding

20    that Plaintiff's past work was full-time was properly made.

21    In addition, Defendant correctly notes that "work may be substantial even if it is done on a

22    part-time basis."   *Byington v. Chater*, 76 F.3d 246, 250 (9th Cir. 1996) (quoting *Wright v.*

23    *Sullivan*, 900 F.2d 675, 678 (3rd Cir. 1990)).   Furthermore, "substantial gainful activity" includes

24    the "kind of work usually done for pay or profit, whether or not a profit is realized."   *Id.* at 248

25

26    REPORT AND RECOMMENDATION
      PAGE - 15

1   (quoting 20 C.F.R. § 416.972(a)).  Here, Plaintiff does not dispute that she earned wages.[5]  Given

2   the applicable inquiry and the particular facts of this case, I find that ALJ Nichols's conclusion

3   that Plaintiff's past employment constitutes "past relevant work" is supported by substantial

4   evidence in the record and must be affirmed.

5                          2.      *Plaintiff's residual functional capacity*

6           ALJ Nichols determined that Plaintiff would be able to perform at least sedentary unskilled

7   work activity, including her past relevant work, which was characterized as "sub-sedentary".[6]

8   ALJ Nichols found that although Plaintiff suffered some nonexertional limitations as a result of

9   her depression, she "has the ability to make simple work decisions, respond appropriately to

10  supervisors and co-workers, handle routine changes, and work on a sustained and continuous

11  basis." (Tr. 26.)   These findings are supported by substantial evidence in the record.  As

12  discussed above, ALJ Nichols properly discounted the conclusions formulated by Drs. Short and

13  Washburn.  Having discounted these conclusions, as well as Dr. Biermann's opinions

14  (unchallenged by Plaintiff), ALJ Nichols was left with reports written by Dr. Marty Hoiness,

15  M.D., Dr. Gerald Peterson, Ph.D., and Dr. Jeremy Nelson, Ph.D.

16

17          [5]Plaintiff contends only that the amount of wages she earned was so small, and that her

18  family contributed so much to her upkeep, that she cannot be considered to have engaged in
    gainful activity.

19
            [6]Plaintiff notes in passing that a prior Social Security determination found that Plaintiff
20  could not perform any of her past relevant work.  (Pl.'s Opening Brief 2 (citing Tr. 137).)
    However, this previous determination characterized her past relevant work ("clerk") as "skilled"
21  *and* found that her RFC was "light" and that her MRFC was "unskilled."  (Tr. 137.)  Thus, the
    prior finding that Plaintiff was unable to perform her past relevant work ("PRW") was due to the
22  different characterization of her PRW.  In contrast, ALJ Nichols's finding that Plaintiff's RFC is
    "sedentary" is, from Plaintiff's perspective, more generous that the previous finding.  However,
23  because ALJ Nichols also found that Plaintiff's PRW (involving labeling boxes with their weights)
    was sedentary or sub-sedentary, even an RFC of "sedentary" did not preclude Plaintiff from
24  performing her PRW.

25

26  REPORT AND RECOMMENDATION
    PAGE - 16

1    Dr. Hoiness, who evaluated Plaintiff, agreed that Plaintiff suffered from major depression,
2    but opined (1) that Plaintiff would be "able to perform simple and repetitive tasks, but would have
3    difficulty interacting with coworkers due to her lack of English" (Tr. 22); and (2) that most of
4    Plaintiff's difficulties "are due to acculturation issues, inability to speak English, and lack of social
5    support" (*id*.).  Drs. Peterson and Nelson agreed that Plaintiff suffered from depression, but also
6    agreed that she should be capable of performing simple work within the limits of a workplace.
7    (Tr. 23.)  These opinions in the record are sufficient to constitute "such relevant evidence as a
8    reasonable mind might accept as adequate to support" ALJ Nichols's conclusion that Plaintiff is
9    capable of performing sedentary unskilled work.  Accordingly, ALJ Nichols's findings that
10   Plaintiff's RFC is "sedentary" and that her "MRFC" is unskilled" should be affirmed.

11                                    VII.  CONCLUSION

12   The Commissioner's determination to deny Plaintiff's application for SSI benefits is
13   supported by substantial evidence and is free of legal error.  Based on the record evidence, the
14   undersigned recommends that the Commissioner's decision be AFFIRMED.  A proposed Order
15   accompanies this Report and Recommendation.

16   DATED this 5th  day of May, 2006.

17

18                                              MONICA J. BENTON
19                                              United States Magistrate Judge

20

21

22

23

24

25   REPORT AND RECOMMENDATION
26   PAGE - 17